In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 10-1354 & 11-1243

JORGE SOLIS-CHAVEZ,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. A037-116-580

ARGUED OCTOBER 1, 2010—DECIDED OCTOBER 25, 2011

Before POSNER, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Jorge Solis-Chavez is a native of
Guatemala who has been a lawful permanent resident
in the United States since 1980. In 2007 he faced removal
as a result of a 1989 Illinois conviction for sexual abuse
of a minor. He initially argued that he was not subject
to removal because the judge who convicted and sen-
tenced him issued a judicial recommendation against de-
portation ("JRAD"). If valid, a JRAD prohibits the De-

partment of Homeland Security ("DHS") from using a conviction as a basis for removing an alien. Here, the JRAD would have provided a complete defense to removal. But before the Immigration Judge ("IJ") rendered a decision, Solis-Chavez's attorney conceded, without consulting his client, that the JRAD was invalid because it was entered outside the 30-day postsentencing window specified in the JRAD statute.

Shortly thereafter, Solis-Chavez retained new counsel and sought to revive the JRAD claim. The Board of Immigration Appeals ("BIA") held that prior counsel had waived the issue. Solis-Chavez petitioned for review. At oral argument we suggested that counsel's concession before the IJ was uninformed and Solis-Chavez might seek to reopen his case based on ineffective assistance of counsel. Solis-Chavez promptly moved to reopen, but the BIA denied the motion. The Board held that the concession was not prejudicial because the JRAD was untimely and therefore invalid. Solis-Chavez again petitioned for review, and we consolidated the petitions for decision.

We now grant the petitions and remand to the BIA for further proceedings. The JRAD was valid. Although it was entered about a month outside the 30-day postsentencing window, the state-court record confirms that the judge unequivocally indicated her intent to retain jurisdiction for the express purpose of considering a JRAD, and the recommendation was thereafter entered without opposition from immigration authorities or the state prosecutor. The JRAD statute (repealed in 1990) is

silent on whether noncompliance with the 30-day time limit is a defect that strips the court of authority to enter the recommendation. *Dolan v. United States*, 130 S. Ct. 2533 (2010), suggests that the missed deadline does not extinguish the court's authority—at least where, as here, the judge timely announced her intent to consider a JRAD and continued the case for that purpose.

Accordingly, conceding the JRAD's invalidity was gravely prejudicial to Solis-Chavez's defense against removal. The BIA must determine on remand whether counsel's concession amounts to a denial of due process, as required for claims of ineffective assistance of counsel in immigration proceedings. We also direct the BIA to clarify two issues it failed to address in Solis-Chavez's first petition.

## I.  Background

In 1980 Solis-Chavez entered the United States from Guatemala as a lawful permanent resident. In 1987 he was arrested and charged in Cook County, Illinois, with aggravated criminal sexual abuse of a victim under 13 for allegedly touching a girl's buttocks. Solis-Chavez pleaded not guilty and was convicted following a one-day bench trial in January 1989. On March 16, 1989, the judge sentenced him to 24 months' probation.

At that time federal immigration law included the JRAD provision, which allowed the sentencing judge to issue a statement at sentencing or within 30 days thereafter indicating that the defendant's conviction

could not be used by immigration authorities as a basis for deportation. Although called a "recommendation," the command of a JRAD was mandatory. *See* 8 U.S.C. § 1251(b)(2) (repealed 1990); *Janvier v. United States*, 793 F.2d 449, 452 (2d Cir. 1986).

At sentencing the judge said Solis-Chavez was a good candidate for a JRAD because unlike most sexual assaults, "the victim in this matter was not harmed in any substantial way." Before the judge could formally consider a JRAD, however, Solis-Chavez was required to give notice to immigration authorities so they could register any opposition. Solis-Chavez's attorney said he would notify the authorities, and the judge scheduled a hearing on April 13 for any postsentencing issues, including the JRAD. The judge said she would "go ahead and conclude the sentencing portion of this case" but would "certainly keep this matter on [the] call" to permit Solis-Chavez's counsel to proceed with the JRAD notice. She said the case presented "a novel situation" and that she "anticipat[ed] further proceedings on this matter." With these comments the court continued Solis-Chavez's bond and "retain[ed] jurisdiction for 30 days."

On April 13 the judge was in the middle of a jury trial. When the clerk called Solis-Chavez's case during a break in the proceedings, his attorney was not present. At that moment the judge could not recall the purpose of the hearing, saying only that the case was "up today for post-sentencing motions; whatever those were going to be, I have no idea." Because of her ongoing trial, the judge could not wait for Solis-Chavez's attorney to arrive,

so she continued the case until May 23. On that date—68 days after she sentenced Solis-Chavez—the judge entered a JRAD without opposition from the prosecutor or the immigration authorities.

Solis-Chavez served his probation without incident and avoided further criminal charges. In 2004 he filed a naturalization application and subsequently passed a citizenship test. Three years later, however, Solis-Chavez learned that his application had stalled based on complications with his background check. DHS subsequently arrested Solis-Chavez and charged him with two grounds of removability: (1) as an alien convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii); and (2) as an alien convicted of a crime of child abuse, *id.* § 1227(a)(2)(E)(i). Both charges were based on the 1989 conviction.

Solis-Chavez admitted the factual allegations and conceded removability on the basis of the first charge but not the second. He also moved to terminate the proceedings based on the JRAD. But when the parties discovered that the JRAD had not been entered within 30 days of sentencing, Solis-Chavez's attorney conceded its invalidity. Thereafter, counsel focused on other arguments, including a request that the IJ stay removal proceedings to allow Solis-Chavez's naturalization application to go forward. The IJ found Solis-Chavez removable on both charges, held that the JRAD argument was waived, and rejected the remaining arguments.

Solis-Chavez appealed to the BIA. Represented by new counsel, Solis-Chavez argued that the JRAD was valid despite its untimeliness. He also reiterated the arguments

concerning the crime-of-child-abuse charge and the naturalization application. The BIA dismissed the appeal. The Board explicitly declined to reach the merits of the JRAD issue, finding that Solis-Chavez's counsel had waived it before the IJ. The BIA addressed and rejected some of the other arguments but never addressed Solis-Chavez's contention that he could not be deported on the basis of a crime of child abuse or that removal proceedings should be stayed to allow him to press his naturalization application.

Solis-Chavez petitioned for review. At oral argument we suggested that the waiver of the JRAD issue constrained our review but also that Solis-Chavez might have a claim for relief based on his attorney's mistaken concession of what appeared to be a valid claim for a mandatory form of relief from removal. We suggested as well that a motion to reopen before the BIA might be appropriate. While we had the petition under advisement, Solis-Chavez moved to reopen the proceedings before the BIA. The BIA denied the motion, holding that the JRAD was untimely and therefore counsel's concession was not prejudicial. Solis-Chavez again petitioned for review. We consolidated the petitions for decision.

## II. Discussion

In both opinions under review, the BIA conducted its own analysis rather than supplementing or adopting the analysis of the IJ, so our focus is on the BIA's decisions. *Chen v. Holder*, 604 F.3d 324, 330 (7th Cir. 2010). We

review the agency's legal determinations de novo, but defer to the BIA's reasonable interpretations of its own regulations. *Mancillas-Ruiz v. Holder*, 625 F.3d 993, 996 (7th Cir. 2010).

## A. JRAD and Due Process

We begin with the BIA's denial of Solis-Chavez's motion to reopen based on ineffective assistance of counsel. If successful, this claim could serve as a complete bar to removal. As we have noted, the effect of a JRAD is mandatory and prevents removal based on the conviction to which it applies.

Although removal has serious consequences, it is a civil proceeding. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1481 (2010). As such, aliens in immigration proceedings do not have a Sixth Amendment right to the effective assistance of counsel. *Pervaiz v. Gonzales*, 405 F.3d 488, 489-90 (7th Cir. 2005). They do, however, have a due-process right to a fair hearing. *Kay v. Ashcroft*, 387 F.3d 664, 676 (7th Cir. 2004). The BIA has a body of caselaw holding that an alien's due-process rights can be violated by his attorney's ineffective assistance in removal proceedings. *See generally Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). *But see Surganova v. Holder*, 612 F.3d 901, 907 (7th Cir. 2010) (reviewing *Lozada*'s subsequent history and noting that "the legal standards that the BIA wishes to follow for these claims [have] been in a state of flux").

There are three requirements for relief on this ground. First, the alien must comply with certain procedural

requirements. *See Lozada*, 19 I. & N. Dec. at 639. Second, the alien must show "that he was prejudiced by his representative's performance." *Id.* at 638. Finally, "[i]neffective assistance of counsel in a deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Id.*

Here, the BIA determined (and the government does not dispute) that Solis-Chavez complied with the first requirement. The BIA concluded, however, that Solis-Chavez could not satisfy the second. Specifically, the BIA held that because the JRAD was untimely, counsel's concession of its invalidity did not deprive Solis-Chavez of a valid defense to removal. Accordingly, the Board concluded that he was not prejudiced by his counsel's performance and there was no reason to reopen the proceedings.

As relevant here, the JRAD statute provides that immigration authorities may not use a conviction as a basis to remove an alien

> if the court sentencing such alien for such crime shall make, *at the time of first imposing judgment or passing sentence, or within thirty days thereafter*, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter.

8 U.S.C. § 1251(b)(2) (repealed 1990) (emphasis added). The Cook County judge who handled Solis-Chavez's case entered the JRAD 68 days after sentencing. The BIA held that the expiration of the statute's 30-day postsentencing deadline rendered the JRAD ineffective.

The analysis is not quite that simple. Solis-Chavez's judge clearly indicated at sentencing that she intended to consider a JRAD in due course. Indeed, the judge raised the JRAD issue herself. She informed counsel of the notice requirements and deemed Solis-Chavez an appropriate candidate. The judge viewed the case as "very different from a lot of the other cases that might have been charged under the [sexual-assault] statute" because the victim "was not harmed in any substantial way." Moreover, Solis-Chavez had no criminal background. At the end of the sentencing hearing, the judge explicitly "retain[ed] jurisdiction for 30 days," said the case was "still on the call," and made it clear that she "anticipat[ed] further proceedings in this matter."

When the time came for those further proceedings, the judge was in the middle of a jury trial. She called Solis-Chavez's case during a break but under the circumstances did not have an opportunity to refamiliarize herself with the case or the JRAD issue. Solis-Chavez's counsel was not in the courtroom at that moment, so the judge continued the case until the next month. This is not uncommon in high-volume state trial courts, in which judges call dozens of cases each day—often while in trial—and attorneys juggle appearances in several courtrooms on the same day. The decision to continue the

matter outside the 30-day window thus represents an oversight of a busy state trial judge, not an opinion on the merits of the JRAD. Had the judge been reminded of the JRAD clock, we are confident she would have handled the matter more delicately, especially in light of her previously announced intention to consider a JRAD. As it was, the judge entered the recommendation at the next hearing, without opposition from immigration authorities or the state prosecutor. There is no indication that she was unfamiliar with the facts of Solis-Chavez's case at that time. Importantly, the judge was plainly trying to retain jurisdiction for the express purpose of considering the JRAD.

The government maintains that the missed deadline automatically makes the JRAD invalid, but this argument disregards the surrounding circumstances and treats the 30-day deadline as a jurisdictional requirement. Taking the second point first, we do not read the statutory time limit as foreclosing the judge's authority to continue a case postsentencing for the purpose of entering a JRAD. The statute says that the immigration consequences of a conviction are wiped out if the judge makes the recommendation at sentencing or within 30 days of sentencing, but it does not speak to the consequences of missing the deadline; the statute is silent on whether the expiration of that time limit eliminates the court's authority to enter a JRAD. *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006) ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left

to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." (citation omitted)).

In this regard the 30-day limit in the JRAD statute is similar to the statutory deadline at issue in *Dolan v. United States*, 130 S. Ct. at 2538. *Dolan* concerned the statutory time limit for setting victim restitution under 18 U.S.C. § 3664(d)(5), which provides that a sentencing court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." In *Dolan* the district court specifically noted the restitution issue at sentencing but said there was not enough information in the record to determine the proper amount. An addendum to the presentence report was timely filed, but the court inexplicably scheduled the restitution hearing three months outside the 90-day postsentencing window. The Supreme Court held that the missed deadline did not deprive the court of the power to award restitution. *Id.* at 2539.

Because the restitution statute does not on its face "specify a consequence for noncompliance with its timing provisions," the Supreme Court declined to impose its own "coercive sanction." *Id.* (quotation marks omitted). Instead, the Court characterized § 3664(d)(5) as a time-limiting statute that "seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Id.* at 2538. The Court held

that "a sentencing court that misses the 90-day dead-line nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Id.* at 2537.

*Dolan* is instructive here. Like the restitution statute, the JRAD statute does not, by its terms, specify the consequence for noncompliance with its 30-day deadline. When the statute was in effect, the short statutory window prevented sentencing judges from entering a JRAD retrospectively or long after the sentencing hearing when the facts of the case have faded from memory. *Janvier*, 793 F.2d at 453-55. But the statute itself is silent on whether the 30-day time limit affects the court's authority to enter a JRAD or forecloses the possibility of a continuance beyond that time frame where the court has timely announced its intention to consider making the recommendation. As in *Dolan*, this statutory silence suggests that a missed deadline, "even through [the court's] own fault . . . , does not deprive the court of the power" to enter a JRAD. *See Dolan*, 130 S. Ct. at 2539.

While we have not previously considered the validity of an untimely JRAD, we have addressed the effect of belated notice. In *Cerujo v. INS*, 570 F.2d 1323, 1324 (7th Cir. 1978), the judge entered a JRAD at sentencing but without proper notice to immigration officials. We acknowledged the argument that "the 30-day time limit and by analogy the notice requirement should be read as directory and not mandatory." *Id.* at 1325 (citing *Velez-*

*Lozano v. INS*, 463 F.2d 1305, 1310 (D.C. Cir. 1972) (Fahy, J., dissenting)). But we noted as well that the statutory language "does not clarify the effect of a recommendation against deportation made without prior notice to the INS." *Id.* We held that at least where the government had not been prejudiced, it was appropriate to remand the case for notice and a new JRAD hearing. *Id.* at 1325-27.

It's worth emphasizing that this case is not characterized by afterthought or deadline-manipulating gamesmanship. This is not, for example, a *nunc pro tunc* JRAD entered only after immigration authorities initiated removal proceedings. *See Velez-Lozano*, 463 F.2d at 1306-08. Nor was the sentencing judge asked to vacate the original judgment and reenter it in order to belatedly bring the case within the 30-day window. *See Rashtabadi v. INS*, 23 F.3d 1562, 1568 (9th Cir. 1994). A retroactive attempt to obtain a JRAD would fall outside the statute's terms. Here, by contrast, Solis-Chavez's judge plainly intended to entertain a JRAD at sentencing but could not do so without notice to immigration authorities. She said she would retain jurisdiction so that notice could be given, and she adjourned the case for the express purpose of considering a JRAD once that prerequisite was accomplished. The case progressed steadily toward that end with no intervening events that call Solis-Chavez's motives into question or suggest that the judge's familiarity with his case had waned. The JRAD was entered at the second hearing without objection from immigration authorities or the state prosecutor.

Accordingly, under these circumstances, and because the statute does not itself specify the consequences of noncompliance with the time limit, we see no reason to treat the missed deadline as invalidating the JRAD. By conceding the issue before the IJ, Solis-Chavez's attorney waived a complete defense to removal and therefore prejudiced his client's case.[1] It remains to be determined whether that concession rendered the administrative proceedings "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lozada*, 19 I. & N. Dec. at 638. We remand to the agency for further proceedings to address this issue.

## B.  Failure to Address the Motion to Stay

Solis-Chavez also challenged the BIA's failure to consider his motion to stay removal proceedings to permit his naturalization application to proceed. Though the BIA need not "write an exegesis on every contention, it must consider the issues raised[] and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th

---

[1]  We reject the government's argument that Solis-Chavez has no interest in the JRAD that can be protected under the Due Process Clause. It is true that he has no right to a JRAD (it's a purely discretionary form of relief), but he may certainly protect a previously entered JRAD against the government's claim that it is untimely and therefore invalid.

Cir. 2008) (quotation marks omitted). The BIA never addressed Solis-Chavez's request that the removal proceedings be stayed to allow his naturalization application to move forward.

The government argues that Solis-Chavez's motion was doomed in any event. The governing regulation provides:

> An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization *when the alien has established prima facie eligibility for naturalization* and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

8 C.F.R. § 1239.2(f) (emphasis added). In *Matter of Hidalgo*, 24 I. & N. Dec. 103, 106 (BIA 2007), the BIA held that only the DHS may establish an alien's prima facie eligibility for naturalization for purposes of terminating removal proceedings under this regulation. In other words, an IJ or the BIA may terminate removal proceedings only when "some form of affirmative communication from [DHS]" establishes the alien's prima facie eligibility for naturalization. *Hidalgo*, 24 I. & N. Dec. at 106. The DHS has provided no such communication here.

The Board's decision in *Hidalgo* has been controversial. The majority opinion generated a spirited dissent that the panel majority itself acknowledged was "not without

some force." *Id.* at 108. And the opinion has been criticized as setting up a Catch-22 because federal law generally prohibits DHS from making the type of communication mandated by the decision. *See* 8 U.S.C. § 1429 ("[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act . . . .").

The Second Circuit explained this problem at length in *Perriello v. Napolitano*, 579 F.3d 135 (2d Cir. 2009). The regulation in question dates back to 1974. *Id.* at 139. Back then, the BIA interpreted it to require either the Immigration and Naturalization Service or a federal court to issue a statement of prima facie eligibility for naturalization. *See Matter of Cruz*, 15 I. & N. Dec. 236, 237 (BIA 1975). In 1990 Congress overhauled the naturalization process, stripping courts of authority to naturalize and preventing the Attorney General from considering a naturalization application while a removal proceeding is pending. *Perriello*, 579 F.3d at 139-40. The regulation was never amended, however, and *Hidalgo* preserved the core holding of *Cruz* despite the intervening change in naturalization practices. *Hidalgo*, 24 I. & N. Dec. at 106. As a result, an alien can never get the communication he needs to support a stay of removal proceedings under the regulation—"[t]he law, in effect, seems to be chasing

its tail."[2] *Perriello*, 579 F.3d at 138; *see also Zegrean v. Attorney Gen.*, 602 F.3d 273, 274-75 (3d Cir. 2010) (calling the conflict "awkward if not altogether unworkable" and a "knot we are asked to untangle").

Every circuit court that has reviewed a BIA decision applying *Hidalgo* has affirmed the rule, typically relying on the deference owed to the BIA in interpreting its own regulations. *See, e.g.*, *Robertson-Dewar v. Holder*, 646 F.3d 226, 230-31 (5th Cir. 2011); *see also Barnes v. Holder*, 625 F.3d 801, 805 (4th Cir. 2010) (collecting cases). And the *Perriello* court itself ultimately concluded that "it is not a judicial role to save a regulation that now conflicts, at least in part, with the underlying statute." 579 F.3d at 142. The issue is not properly before us here, however, because the BIA overlooked it. Accordingly, the proper

---

[2] The Second Circuit also noted the variety of responses to this apparent inconsistency:

> In some cases (such as this one), DHS has adjudicated naturalization applications while aliens have awaited termination of their removal proceedings, notwithstanding the bar in § 1429. In other cases, IJs have determined prima facie eligibility for naturalization, notwithstanding the BIA's holding in *Cruz* that they lack jurisdiction to do so. And in yet other cases, no determination of prima facie eligibility has been made by anybody, leaving aliens to pursue writs of mandamus in an effort to compel DHS to produce "affirmative statement[s]" as to prima facie eligibility.

*Perriello v. Napolitano*, 579 F.3d 135, 140-41 (2d Cir. 2009) (citations omitted).

course is to remand the case to the BIA, allow it to address Solis-Chavez's argument, and then if necessary review the BIA's decision.[3]

## C. Section 212(c) Challenge

Solis-Chavez also asks us to remand for a hearing to determine whether he is retroactively eligible for relief from removal under § 212(c), a repealed provision of the Immigration and Nationality Act. Section 212(c) provided the Attorney General with the discretion to allow an otherwise-deportable alien to remain in the country so long as he had lived here for at least seven

---

[3] The BIA should also address another issue on remand. As we have noted, the DHS sought to remove Solis-Chavez on the ground that he was an alien convicted of a crime of child abuse. Solis-Chavez contested this charge throughout his removal proceedings, but the BIA did not address it. The government now concedes that the crime-of-child-abuse ground applies only to convictions occurring after September 30, 1996. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 350(b), 110 Stat. 3009 (1996). Solis-Chavez was convicted in 1989, so this charge of removability was erroneous. The BIA's failure to discuss the issue, however, was harmless in light of the alternative ground for removal (although that alternative basis for removal will be affected by the BIA's resolution of the JRAD and *Hidalgo* issues on remand). *See Victor v. Holder*, 616 F.3d 705, 710 (7th Cir. 2010) (harmless-error standard applies in judicial review of immigration proceedings). Still, the BIA should correct the error on remand.

years and had not been convicted of certain types of crimes. *See* 8 U.S.C. § 1182(c) (repealed 1996). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 replaced the broad discretion of § 212(c) with the narrower "cancellation of removal" provision. *See* 8 U.S.C. § 1229b; *see generally Mata-Guerrero v. Holder*, 627 F.3d 256, 257-58 (7th Cir. 2010). Solis-Chavez is ineligible for cancellation of removal.

In *INS v. St. Cyr*, the Supreme Court held that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. 289, 326 (2001). *St. Cyr* has led to a circuit split over whether retroactive § 212(c) relief was available outside the guilty-plea context. *See Ferguson v. U.S. Attorney Gen.*, 563 F.3d 1254, 1263-67 (11th Cir. 2009) (collecting cases and discussing the various approaches). Our circuit reads *St. Cyr* as being limited to its facts; we have adopted a "categorical approach" and emphasized that "the category of aliens who went to trial did not forgo any possible benefit in reliance on section 212(c)." *Canto v. Holder*, 593 F.3d 638, 644 (7th Cir. 2010). Thus, a § 212(c) waiver under *St. Cyr* is limited to those who relied on the availability of this form of relief by (1) pleading guilty prior to its repeal, or (2) conceding deportability with the expectation that they could seek waivers under § 212(c). *Id.* at 643-44 (citing *Montenegro v. Ashcroft*, 355 F.3d 1035, 1036-37 (7th Cir. 2004) (per curiam)).

Solis-Chavez argues that his JRAD application should be viewed as proof of reliance on the availability of § 212(c) relief sufficient to confer eligibility under *St. Cyr*. He maintains that the JRAD application notified immigration officials of his conviction and, as a result, exposed him to potential deportation. He claims that he relied on the existence of the § 212(c) waiver as a backup in the event that he faced deportation. This argument is foreclosed by our precedent; Solis-Chavez's case falls within neither of the categories mentioned in *Canto*.

### D. Equitable Estoppel

Finally, Solis-Chavez argues that the government should be equitably estopped from removing him. It is an open question whether equitable estoppel is available against the government. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422-23 (1990) (noting that it has rejected every claim of equitable estoppel against the government but declining to adopt a flat rule prohibiting the claim). Assuming it is, before the government may be estopped from enforcing the law, the party advancing the argument must show all the traditional elements of estoppel plus some "affirmative misconduct." *Gutierrez v. Gonzales*, 458 F.3d 688, 691 (7th Cir. 2006).

Solis-Chavez argues that the government's failure to contest the JRAD before or after it was entered, and its lengthy delay in processing his naturalization application and seeking his removal, amount to "affirmative misconduct" warranting estoppel. He cites *Mendoza-Hernandez v. INS*, 664 F.2d 635, 639 (7th Cir. 1981), for the

proposition that "[u]nexplained delays . . . can amount to affirmative misconduct." That statement, however, is no longer good law. *See INS v. Miranda*, 459 U.S. 14, 19 (1982) ("Proof only that the Government failed to process promptly an application falls far short of establishing [affirmative misconduct]."); *see also Gutierrez*, 458 F.3d at 692 ("[A]n unexplained delay . . . quite clearly cannot form the basis of an estoppel argument against the government.").

Solis-Chavez raises other potential sources of affirmative misconduct: his arrest and detention without explanation; the procedural Catch-22 created by *Hidalgo*; and the DHS's failure to provide him with seizure medication while in custody. These additional arguments do not carry the day. Solis-Chavez will have the opportunity to argue the merits of the *Hidalgo* issue on remand, and the remaining allegations of affirmative governmental misconduct are not of the kind or degree necessary to support estoppel.

For the foregoing reasons, we GRANT Solis-Chavez's petitions, VACATE the BIA's orders, and REMAND for further proceedings consistent with this opinion.