## In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2346

NOURREDINE KHODJA,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of Orders of
the Board of Immigration Appeals.
No. A038-672-573

ARGUED OCTOBER 27, 2011—DECIDED DECEMBER 12, 2011

Before FLAUM, KANNE, and WOOD, *Circuit Judges*.

KANNE, *Circuit Judge.* Petitioner Nourredine Khodja
became a lawful permanent resident of the United
States on February 11, 1984. In 1990, Khodja was con-
victed of aggravated battery and armed violence
and sentenced to four years' imprisonment. After his
sentencing hearing, Khodja moved for a judicial recom-
mendation against deportation ("JRAD"). An assistant
attorney for the Immigration and Naturalization Service

("INS") stated that the motion should be denied because Khodja could seek a § 212(c) waiver in a subsequent immigration proceeding. On this basis, the trial judge denied the motion. Congress repealed § 212(c) in 1996. In 2003, following a vacation to the Dominican Republic, the INS charged Khodja as being inadmissible for having been convicted of a crime involving moral turpitude. Khodja sought a waiver under §§ 212(c) and (h). The immigration judge denied both waivers, and the Board of Immigration Appeals affirmed. Because we find that the repeal of § 212(c) does not apply retroactively to Khodja's case, the petition will be granted.

## I. BACKGROUND

Nourredine Khodja is a sixty-one-year-old Tunisian native and dual citizen of Tunisia and Canada. In 1969, Khodja met his wife, a United States citizen, while she was a summer exchange student in Canada. They married in 1977 and have two children, ages thirty-two and twenty-four. Khodja became a lawful permanent resident of the United States on February 11, 1984.

On October 14, 1988, Khodja was charged in Illinois state court with aggravated battery, armed violence, and attempted murder after he repeatedly stabbed James W. Bevan in the back and side. During the bench trial, expert testimony established that Khodja suffered from major depression with psychotic features at the time he committed the crime. On March 14, 1990, the trial judge found Khodja "guilty but mentally ill" on the aggravated battery and armed violence counts. Khodja was found

not guilty of attempted murder. On May 18, 1990, Khodja was sentenced to four years' imprisonment for his armed violence conviction. He did not receive a sentence on the aggravated battery conviction.[1]

Following his sentencing hearing, Khodja moved for a judicial recommendation against deportation, or JRAD. At the time of Khodja's hearing, a sentencing judge could issue a JRAD, which provided that the defendant's conviction could not be used as a basis for deportation by immigration authorities. *See* 8 U.S.C. § 1251(b)(2) (repealed 1990). "Although called a 'recommendation,' the command of a JRAD was mandatory." *Solis-Chavez v. Holder*, Nos. 10-1354 & 11-1243, 2011 WL 5041916, at *2 (7th Cir. Oct. 25, 2011). At Khodja's hearing, Seth Fitter, an assistant attorney for the former INS, urged the court to deny the JRAD motion because Khodja could seek a waiver before an immigration judge. He stated as follows:

> Basically, Judge, this is a highly unusual type of relief for the Defendant here.
>
> There is an Immigration Judge who handles immigration cases. He is apart from the Immigration Service.
>
> He would make a ruling on a case like this to determine whether the Defendant is deportable. And then after that, if that's correct, then there is a separate portion in which the Defendant would testify, bring

---

[1] The trial judge did not sentence Khodja on the aggravated battery count because the aggravated battery conviction arose from the same offense as his armed violence conviction.

in his wife, and the Judge has—could grant a waiver of this conviction.

But if the Court grants this motion, it's as if you are usurping the role of the Immigration Judge in making that ruling.

And I don't believe in this type of case the Immigration Judge should be taken out of the picture, so to speak.

(R. at 534-35.) The Illinois state trial judge then denied the JRAD motion, stating "it's more appropriate to be heard in the proper tribunal" and "[t]his is a matter which has to be handled by the immigration authorities." (R. at 536.) Khodja's counsel moved to withdraw the JRAD motion, which the trial judge granted.[2]

Khodja appealed his conviction to the Illinois Appellate Court. On September 13, 1991, the Illinois Appellate Court denied Khodja's appeal. Khodja served eighteen

---

[2] The trial judge at first denied the JRAD motion, stating "I am going to deny the motion. I feel that this is a matter for the federal government to be concerned with. Motion denied." (R. at 535.) Khodja's counsel then queried whether the judge was denying the motion on its face or in deference to the federal courts, to which the trial judge responded that it would be more appropriately heard in the proper tribunal. Khodja's counsel moved to withdraw the motion, which the judge granted, explaining, "I didn't make a ruling. I said motion denied, but if [counsel] wants to withdraw the motion, she may do so. This is a matter which has to be handled by the immigration authorities." (R. at 536.)

months of his four-year sentence. He was released from custody in July of 1993 and discharged from parole on September 8, 1994.

On December 22, 2002, Khodja and his wife returned to the United States from a vacation to the Dominican Republic. Khodja presented himself to officials at the airport and applied for admission. Rather than admit Khodja, immigration officials deferred his inspection and ordered him to appear before the Chicago immigration office. On April 24, 2003, immigration officials served Khodja with a Notice to Appear. The government alleged that Khodja was subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude.

On May 29, 2003, Khodja appeared before an immigration judge. Khodja acknowledged that he was not a United States citizen and had presented himself for inspection as a returning lawful resident on December 22, 2002. He denied factual allegations relating to his prior convictions for armed violence and aggravated battery. On February 26, 2004, Khodja indicated to the immigration judge that he would seek a § 212(c) waiver and a § 212(h) waiver. Prior to its repeal, § 212(c) granted discretion to the Attorney General to admit certain aliens despite their inadmissible status. *See* 8 U.S.C. § 1182(c) (repealed 1996). Section 212(h), which is still in effect, grants the Attorney General broad discretion to admit an alien under various circumstances, including if denial of admission would result in extreme hardship to the alien's family. *See* 8 U.S.C. § 1182(h). This relief

is unavailable to any alien convicted of an aggravated felony following his or her previous admittance into the United States. *Id.*

Khodja's final removal hearing was held on June 15, 2005. The immigration judge determined that Khodja was removable, denied Khodja's applications for waivers under §§ 212(c) and (h), and ordered Khodja deported to Canada. Khodja timely appealed the immigration judge's decision to the Board of Immigration Appeals. The Board held that Khodja was ineligible for a § 212(c) waiver but agreed with Khodja that the immigration judge erred in its analysis of his § 212(h) waiver application. The Board remanded to the immigration judge for a proper determination of whether Khodja had been convicted of an "aggravated felony" for purposes of § 212(h).

On remand, the immigration judge found that Khodja had been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(F). Accordingly, the immigration judge again denied Khodja's application for a § 212(h) waiver. Khodja appealed this decision to the Board, which affirmed the immigration judge's decision, although on different grounds. Khodja filed his petition for review with this court on June 14, 2011.

## II. ANALYSIS

We have jurisdiction to review constitutional claims and questions of law raised in a petition for review. *Frederick v. Holder*, 644 F.3d 357, 362 (7th Cir. 2011), *petition*

*for cert. filed*, 80 U.S.L.W. 3078 (U.S. Aug. 1, 2011) (No. 11-135); 8 U.S.C. §§ 1252(a)(2)(C), (D). Khodja challenges the Board's decision based on legal error and due process grounds. We review these claims *de novo*. *Frederick*, 644 F.3d at 362.

*A.  Section 212(c) Waiver*

Khodja was charged as inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), which provides that "any alien convicted of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible." Khodja does not challenge that he was convicted of a crime involving moral turpitude. Instead, Khodja asserts that he is entitled to a hearing on his application for a § 212(c) waiver. Section 212(c) of the Immigration and Nationality Act of 1952 provided that

> [a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . .

8 U.S.C. § 1182(c) (repealed 1996); *INS v. St. Cyr*, 533 U.S. 289, 295 (2001). This section was amended in 1990 to preclude relief for anyone convicted of an aggravated felony who served a term of at least five years' imprisonment. *St. Cyr*, 533 U.S. at 297. In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 440(d), 110 Stat.

1214, 1277. The AEDPA amended § 212(c) to preclude relief for convictions based on a broad set of offenses, including all aggravated felonies. *St. Cyr*, 533 U.S. at 297; *Frederick*, 644 F.3d at 361 n.2. Later that same year, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009. This statute repealed § 212(c), replacing it with "a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens." *St. Cyr*, 533 U.S. at 297 (*citing* 8 U.S.C. § 1229b). This section also precludes relief for any alien convicted of an aggravated felony. *Id.* Prior to its repeal, aliens who applied for equitable relief under § 212(c) had an approximately fifty percent chance of success. *Canto v. Holder*, 593 F.3d 638, 642 (7th Cir.), *cert. denied*, 131 S. Ct. 85 (2010).

In 2001, the Supreme Court addressed the retroactive application of the IIRIRA's repeal of § 212(c) in *INS v. St. Cyr*, 533 U.S. 289 (2001). "The *St. Cyr* Court concluded that Congress did not provide a sufficiently clear command with respect to the temporal reach of the repeal of former § 212(c) by IIRIRA section 304(b), such that the Court could not unambiguously conclude that Congress intended it to apply retroactively." *Canto*, 593 F.3d at 642. The Supreme Court then held that retroactive application of the IIRIRA's repeal of § 212(c) "would have an impermissible retroactive effect on aliens who had pled guilty prior to the repeal of section 212(c) because the repeal fundamentally changed the rights they had at the time of their convictions." *Id.* The Supreme Court noted the quid pro quo involved in

plea agreements and held that aliens who entered into plea agreements "'almost certainly relied upon [the] likelihood of receiving discretionary relief under section 212(c) in deciding whether to forgo their right to a trial . . . .'" *Id.* (*quoting St. Cyr*, 533 U.S. at 325).

*St. Cyr* failed to address whether aliens who pled not guilty and were convicted following a trial are also entitled to relief under § 212(c). A circuit split exists as to whether such relief is available outside the guilty-plea context. *See Solis-Chavez*, 2011 WL 5041916, at *8. "The rule in this circuit remains that relief under § 212(c) is not available to any alien whose removal proceeding began after repeal except to those who affirmatively abandoned rights or admitted guilt in reliance on § 212(c) relief." *United States v. De Horta Garcia*, 519 F.3d 658, 661 (7th Cir. 2008). Previously we have recognized that those who pled guilty prior to the repeal of § 212(c) and those who conceded deportability based on the expectation that they could seek relief under § 212(c) are entitled to *St. Cyr* relief. *Id.* "In both cases, we required a showing of specific facts demonstrating actual reliance." *Id.*

Although Khodja did not plead guilty and was instead convicted at trial, we find that he has demonstrated actual reliance on the availability of a § 212(c) waiver such that he affirmatively abandoned his right to pursue a JRAD. In *Solis-Chavez*, we noted that although a JRAD is a purely discretionary form of relief, it can serve as "a complete defense to removal." 2011 WL 5041916, at *6. Thus, in Solis-Chavez's case, he had a due process interest in protecting "a previously

entered JRAD against the government's claim that it is untimely and therefore invalid." *Id.* at *6 n.1.

In this case, INS assistant attorney Fitter specifically referenced the availability of a waiver at Khodja's hearing on his JRAD motion. He stated: "[T]here is a separate portion in which the Defendant would testify, bring in his wife, and the [Immigration] Judge . . . could grant a waiver of this conviction." (R. at 534-35.) Immediately following Fitter's statement, the trial judge pre-liminarily denied Khodja's JRAD motion. Khodja then withdrew his request for a JRAD. The facts indicate that Khodja chose to forgo a possible benefit in reliance on Fitter's statement that he would be eligible for § 212(c) relief. *See Esquivel v. Mukasey*, 543 F.3d 919, 922 (7th Cir. 2008) (requiring a showing of specific facts demon-strating actual reliance). If the state trial court had granted Khodja's motion for a JRAD, Khodja would have a complete defense to deportation. But because of Fitter's statement, Khodja withdrew his motion and chose not to appeal the denial of his JRAD motion, even though he appealed his conviction. We find that Khodja has demonstrated actual reliance in forgoing a possible benefit such that the repeal of § 212(c) does not apply retroactively in this case. Accordingly, we will remand to the agency for further proceedings to address Khodja's § 212(c) waiver application.

## B.  Section 212(h) Waiver

Khodja also applied for a § 212(h) waiver during his deportation proceedings. Under § 212(h), the Attorney

General has broad discretion to waive the inadmissibility of an alien in a variety of circumstances. *See* 8 U.S.C. § 1182(h). No waiver may be provided, however, if the alien has been convicted of an "aggravated felony." *Id.* "Aggravated felony" includes a "crime of violence," as defined in 18 U.S.C. § 16, for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(F).

A "crime of violence" has two definitions. The first uses a categorical approach and applies to "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Our review under § 16(a) is strictly limited to the elements of the crime. *LaGuerre v. Mukasey*, 526 F.3d 1037, 1039 (7th Cir. 2008) (per curiam). The second definition includes "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The Board determined that Khodja's armed violence offense, based on the predicate felony of aggravated battery, satisfies this second definition.

The Board applied a modified categorical approach in determining that the armed violence conviction met the definition of "crime of violence" under § 16(b), looking beyond the elements of the offense to the charging documents. Relying upon this court's reasoning in *United States v. Fife*, 624 F.3d 441 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1536 (2011), the Board held that Khodja's predicate felony of aggravated battery

involved a greater risk of physical force than the predicate felony of possession with intent to deliver cocaine that was at issue in *Fife*. Moreover, the Board noted that the indictment referenced Khodja's acts of knowingly causing bodily harm to the victim by stabbing him in the back and side. This was enough for the Board to conclude that Khodja had been convicted of a "crime of violence" under § 16(b).

Khodja argues that the Board erred in using a modified categorical approach or, in the alternative, that the Board improperly considered Khodja's actual conduct in determining whether his offense satisfied the modified categorical approach. Khodja's first argument is without merit. The statutory language for armed violence states: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law . . . ." 720 ILCS 5/33A-2(a). The term "any felony" encompasses a broad range of underlying acts which may or may not constitute crimes of violence. The modified categorical approach applies when "analysis of the elements reveals that a statute may be violated in several ways, such as a statute which creates more than one crime or one that defines one crime with multiple enumerated modes of commission." *Fife*, 624 F.3d at 445; *cf. Gaiskov v. Holder*, 567 F.3d 832, 836 n.2 (7th Cir. 2009) (based on the statutory language, all prohibited conduct was reasonably understood as "sexual abuse of a minor"; therefore, it was unnecessary to apply the modified categorical approach in determining whether the defendant's offense met the definition of "sexual abuse"). In *Fife*, we held that

Illinois's armed violence statute "creates multiple modes of commission, defined by the felony committed while armed with a dangerous weapon." 624 F.3d at 446. The same armed violence statute is at issue in this case and the Board was correct in applying a modified categorical approach.

Under the modified categorical approach, "we look at the conviction's judicial record to determine whether it qualifies as a crime of violence, but we will still not examine the particular facts of the conviction." *United States v. Curtis*, 645 F.3d 937, 940 (7th Cir. 2011). "[T]he point of the expanded inquiry is not to consider what the defendant in fact did but to determine which category of crime the defendant committed." *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 3018 (2011). In this case, the Board considered the underlying felony of aggravated battery as well as Khodja's actual conduct in stabbing the victim. Because the modified categorical approach prohibits consideration of a defendant's actual conduct, the Board erred in considering what Khodja did. But this error is harmless because a proper examination of Khodja's conviction under the modified categorical approach, considering only the underlying felony of aggravated battery, still leads to the conclusion that Khodja was convicted of a "crime of violence."

In Illinois, "[a] person commits aggravated battery when, in committing a battery . . . he or she knowingly . . . [c]auses great bodily harm or permanent disability or disfigurement." 720 ILCS 5/12-3.05(a)(1). The nature of this crime is such that a victim suffers

physical harm at the hands of a willing perpetrator. To establish that a defendant committed the underlying felony of aggravated battery, a prosecutor would have to demonstrate that the defendant caused bodily harm. We have interpreted similar statutes as having as an element the use of physical force against another. *See LaGuerre*, 526 F.3d at 1039 (discussing Illinois's domestic battery statute).

We hold that a person who commits an aggravated battery in Illinois presents "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The addition of a dangerous weapon increases this risk. Under the modified categorical approach, therefore, Khodja was convicted of a "crime of violence" under § 16(b). In addition, Khodja was imprisoned for more than one year. Accordingly, his conviction fits the definition of an "aggravated felony" and § 212(h) relief is unavailable.

## III. CONCLUSION

For the foregoing reasons, we GRANT the petition and REMAND this case for a full hearing on Khodja's § 212(c) waiver application.