NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 30, 2013
Decided March 5, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 12-2547

| | |
|---|---|
| FARYAL AZIZ AHMED and<br>MUHAMMAD ARIF KHAN,<br>    *Petitioners,*<br><br>    *v.*<br><br>ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>    *Respondent*. | Petition for Review of Order of the Board<br>of Immigration Appeals.<br><br>Nos. A099-717-962 & A099-717-963 |

**O R D E R**

Pakistani citizens Faryal Ahmed and her husband, Muhammad Khan, seek review of an order denying them withholding of removal. Khan's claim for withholding is derivative of Ahmed's. An immigration judge concluded that Ahmed had not shown past persecution or a well-founded fear of future persecution, and the Board of Immigration Appeals rejected the petitioners' request for a remand based on allegedly deficient performance by their lawyer during the hearing before the IJ. We conclude that the Board did not abuse its discretion and deny the petition for review.

Ahmed and Khan separately came to the United States in 2002 as visitors. After

overstaying their visas by several years, they were placed in removal proceedings. They applied for asylum, withholding of removal, and relief under the Convention Against Torture but pressed only their withholding claim at the hearing before the IJ.[1] The IJ found that the asylum claims were untimely anyway; Ahmed and Khan do not contest that finding, and even if they did, we would lack jurisdiction to hear the challenge. 8 U.S.C. § 1158(a)(3); *Ghaffar v. Mukasey*, 551 F.3d 651, 654 (7th Cir. 2008). Because Khan's claim for withholding is derivative, we will refer only to Ahmed and her claim.

At the removal hearing in 2010, Ahmed testified that from 1997 through 2000 she was active as a college student in the Pakistan Muslim League-Nawaz ("PML"). In 2001 and continuing through 2002, members of a rival political party, Muttahida Quami Movement ("MQM"), began pressuring Ahmed through phone calls and letters to switch parties or face torture and death. On one occasion during 2002, Ahmed said, she was grabbed on the street by two men who had been following in a van and told she would be taught a "lesson" if she refused to join their party. Also in 2002, unseen vandals smashed the windows of her friend's car, slashed the tires, and painted the hood with the words "join the liberators or die." Ahmed assumes that she was the target because she was with her friend shopping when the parked car was damaged. Ahmed then went into hiding and later entered the United States. Khan, whom she married that summer, had arrived a month earlier. Ahmed told the IJ that originally she had planned only to visit her brother before returning to Pakistan. She decided that it was unsafe to return, however, after learning during calls home to her family that MQM members had been inquiring about her, though without threatening her or her family. She insisted that her one attempt to contact the police was futile because the "MQM is in the government" and is a rival of the PML, and thus the "police cannot support or protect me."

In denying Ahmed's application for withholding, the IJ considered the "general background information, including the State Department opinion" documenting the "terrible conditions that exist in Pakistan." (The IJ entered the country report into the record, even though Ahmed had not submitted it.) Because Ahmed offered no corroborating evidence, not even letters or affidavits from family or friends, the IJ was left with only her testimony. He found Ahmed credible but her testimony too insubstantial to

---

[1]There was disagreement at the removal hearing about whether Khan had applied for asylum. His completed application is in the administrative record, but apparently it had been misplaced before the hearing. The government thus asserted, and the IJ found, that Khan had not applied for any type of relief. Still, the IJ assumed that Khan could benefit derivatively from Ahmed's application. In this court the government still insists that Khan did not apply for relief, but it says nothing about his application in the record.

establish past persecution: The threats had occurred eight years earlier, came from unknown persons, and were related only to Ahmed's political activities during her college years. Moreover, the IJ continued, Ahmed came to the United States as a visitor, apparently not fearful enough of the threats to flee Pakistan. Her fear of future persecution, the IJ concluded, was speculative and remote based on the threats from 2002 and calls to her family. Nor, the IJ concluded, did Ahmed present any evidence that she was unable to safely relocate or that the Pakistani government was unwilling or unable to protect her.

The Board agreed that Ahmed had failed to show past persecution or a risk of future persecution. The Board did not address, however, whether Ahmed had submitted corroborating evidence or evidence that the Pakistani government would be unable or unwilling to protect her. The Board rejected Ahmed's claim that the IJ improperly had relied on his own knowledge about Pakistan because she failed to show prejudice from the IJ's use of that information. She also failed, the Board concluded, to establish prejudice from her attorney's allegedly deficient performance.

In this court Ahmed first asserts that the IJ and Board failed to justify their findings that she had not suffered persecution and did not face it in the future. She argues that her testimony about the harassment and physical attacks, the only real evidence, amply support her eligibility for withholding, but she only recounts the evidence without explaining how it supports her theory.

To establish entitlement to withholding of removal, Ahmed was required to demonstrate past persecution or a clear probability that she will face persecution if removed. *See Margos v. Gonzales*, 443 F.3d 593, 600 (7th Cir. 2009); *Zeqiri*, 529 F.3d 364, 370 (7th Cir. 2008). Because the Board adopted and supplemented the IJ's reasoning, we review both decisions. *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011); *Milanouic v. Holder*, 591 F.3d 566, 570 (7th Cir. 2010). The underlying factual findings must be upheld if supported by substantial evidence, and the denial of relief also will be sustained unless the evidence compels a contrary conclusion. 8 U.S.C. § 1252(b)(4); *Abraham*, 647 F.3d at 632; *Zeqiri*, 529 F.3d at 370.

Substantial evidence supports the denial of withholding. First, acts of private citizens constitute persecution only if the government is complicit in those acts or unable to help. *Ingmantoro v. Mukasey*, 550 F.3d 646, 650 (7th Cir. 2008); *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001). Ahmed asserts that she was singled out by the MQM, which, she insists, "is in the government" and dominates "the government and police." But Ahmed offered no evidence to support this characterization of the MQM's reach, nor did she offer evidence that police or the government officials ordered or allowed the threats against her, or were unable or unwilling to control the actions of MQM members. Her evidence shows only that

she received threats from unknown persons purportedly supporting a rival political group. *C.f. Meghani*, 236 F.3d at 847 (upholding IJ's finding that beating of political rival by MQM members evidenced only "civil unrest between competing political factions not amounting to persecution").

Second, the threats to Ahmed did not constitute persecution. Threats qualify as persecution only in extreme cases, e.g., when they are "immediate or menacing" or "the perpetrators attempt to follow through on the threat." *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006); *see Pathmakanthan v. Holder*, 612 F.3d 618, 623 (7th Cir. 2010); *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997). The victim must also be able to identify the source or purpose of the threats. *Guardia v. Mukasey*, 526 F.3d 968, 972 (7th Cir. 2008); *Mitev v. INS*, 67 F.3d 1325, 1330–31 (7th Cir. 1995). Ahmed conceded that she was never physically harmed, the threats generally were anonymous, and no one ever followed through on the threats even during the months she remained in Pakistan. And since she left Pakistan, the inquiries from MQM members have not been threatening.

Third, Ahmed presented no corroborating evidence that the threats occurred or that the MQM was targeting her. Testimony may on its own prove eligibility for withholding only if it is credible, persuasive, and specific. 8 U.S.C. § 1158(b)(1)(B)(ii); *Rapheal v. Mukasey*, 533 F.3d 521, 528 (7th Cir. 2008). Counsel for the petitioners declined to have Khan testify, presenting testimony from only Ahmed. The IJ found her testimony credible but vague and insufficient to establish persecution. For example, it was unclear whether the threats in 2002 were based on her support for the PML in 1997 to 2000. And although she still has contact with her family in Pakistan, Ahmed gave no reason why she was unable to produce any corroborating evidence at the hearing. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Rapheal*, 533 F.3d at 527, 529. The IJ made clear that, though he understood and believed Ahmed, her evidence was too thin to prove persecution rather than harassment.

Ahmed has failed to develop a distinct challenge to the conclusion that she would not face future persecution, so she has waived that argument. *See Liu v. Holder*, 692 F.3d 848, 851 (7th Cir. 2012); *Wang v. Gonzales*, 445 F.3d 993, 999 (7th Cir. 2006). But at all events, any contention that the record establishes a clear probability of future persecution would fail. It has been more than 10 years since Ahmed left Pakistan, and it is unclear whether the inquiries from MQM members since then have anything to do with her political allegiance. And no one in Ahmed's family has been harmed or threatened since she left. The possibility of future persecution, therefore, is speculative. *See Mabasa v. Gonzales*, 455 F.3d 740, 745 (7th Cir. 2006) ("The INA does not require withholding if an applicant '"might" or "could" be subject to persecution.'" (quoting *INS v. Stevic*, 467 U.S. 407, 422 (1984))); *Kobugabe v. Gonzales*, 440 F.3d 900, 901–02 (7th Cir. 2006) (denying petition for review and

agreeing with IJ that "modest," uncorroborated future risk of persecution did not establish eligibility for withholding).

Ahmed next maintains that the IJ improperly relied on a personal misunderstanding of Pakistan history and politics, rather than on documents in the record, in denying her application. She asserts that the IJ's views "clearly impacted" his finding that her evidence is insufficient to meet her burden of proof, but also argues that the BIA should have scrutinized "the nuance of his language."

The IJ did not improperly consider evidence outside the record. Ahmed was entitled to review key evidence before the day of the hearing or a continuance to rebut it. *See* 8 U.S.C. § 1229a(b)(4)(B); *Tadesse v. Gonzales*, 492 F.3d 905, 909 (7th Cir. 2007). But the IJ's discussion refers only to general political strife in Pakistan: "Musharraf took power from the, the other parties when he came into power. . . . President Musharraf took power, so he wasn't sharing power. He was a military official . . . he took power of the government." "[T]he Muslim League controls most of the population of Pakistan. The Muslim League is the more popular party in Pakistan and then they break down to the PPP and the MQM." This basic information (even if somewhat inaccurate) is not central to Ahmed's claim of persecution and could have been learned from watching the news or reading an article. *E.g.*, Celia W. Dugger, *Coup in Pakistan: The Overview; Pakistan Army Seizes Power Hours After Prime Minister Dismisses His Military Chief*, N.Y. TIMES, Oct. 13, 1999, http://www.nytimes.com/1999/10/13/world/coup-pakistan-overview-pakistan-army-seizes-power-hours-after-prime-minister.html; *Political Parties at a Glance*, WORLD SAVVY, http://worldsavvy.org/monitor/index.php?option=com_content&view=article&id=321&Itemid=462 (Sept. 2008). And anyway, the IJ stated that, although he was "not unmindful" of the poor conditions generally in Pakistan, he decided the case based only on Ahmed's testimony. Ahmed does not argue otherwise.

Ahmed last insists that her former, retained attorney was deficient for, among other things, not providing the IJ with corroborating evidence, and she challenges the Board's finding that she was not prejudiced by counsel's performance. Ahmed asserts without elaboration that the Board applied an incorrect legal standard to decide this issue and accuses the Board of ignoring evidence of her attorney's shortcomings.

The Board did not abuse its discretion by denying the petitioners' request to remand their case based on ineffective assistance of counsel. To start, there is no Sixth Amendment right to counsel (and thus no right to *effective* representation) in removal proceedings. *Solis-Chavez v. Holder*, 662 F.3d 462, 466 (7th Cir. 2011); *Pervaiz v. Gonzales*, 405 F.3d 488, 489–90 (7th Cir. 2005). There exists only a due-process right to a fair hearing, although that right

can be violated by counsel's poor performance. *Solis-Chavez*, 662 F.3d at 466; *Surganova v. Holder*, 612 F.3d 901, 907 (7th Cir. 2010). To demonstrate that their right to due process was violated, Ahmed and Khan needed to complete certain procedural hurdles ((1) show via affidavit that they had an agreement with counsel about the scope of representation, (2) notify counsel of the claim and allow him to respond, and (3) if counsel acted unethically, file a complaint with the proper disciplinary authorities), demonstrate prejudice from their attorney's performance, and show that this prejudice unfairly prevented them "from reasonably presenting [their] case." *See Solis-Chavez*, 662 F.3d at 466 (citing *Matter of Lozada*, 19 I. & N. Dec. 637, 638–39 (BIA 1988)); *Jiang v. Holder*, 639 F.3d 751, 755 (7th Cir. 2011); *Surganova*, 612 F.3d at 907.

Ahmed and Khan met the procedural requirements from *Matter of Lozada*, 19 I. & N. Dec. at 639, but failed to show prejudice or that their hearing was unfair. The petitioners point to language in the IJ's decision suggesting that corroborating evidence would have aided their claim and insist that their attorney had this evidence but failed to provide it to the IJ. But Ahmed and Khan do not specify on what evidence the lawyer supposedly sat. Indeed, Ahmed told the IJ that she had not obtained letters or affidavits from anyone in Pakistan either because she "did not want to bother them" or because it was "hard to get in touch with them." (The second statement seems inconsistent with her testimony that she spoke by telephone with her family as recently as three months before her hearing.)

Counsel (who represents both petitioners) further contends that her predecessor should have applied independently for withholding of removal on Khan's behalf rather than relying on a derivative application, and should have sought CAT protection for both petitioners. But counsel does not hint on what basis, other than derivatively, Khan would have for seeking withholding of removal, and the mention of CAT on these facts is frivolous. *See Kushchak v. Ashcroft*, 366 F.3d 597, 605–06 (7th Cir. 2004); *Ambati v. Reno*, 233 F.3d 1054, 1061–62 (7th Cir. 2000); 8 C.F.R. § 208.13(c)(1). And the petitioners' attempt to bolster their argument with references to former counsel's previous disciplinary troubles is not helpful; the lawyer's past disciplinary issues do not raise an inference of ineffectiveness in *this* case. *See Lin v. Holder*, 630 F.3d 536, 546 (7th Cir. 2010); *United States v. Williams*, 934 F.2d 847, 851–52 (7th Cir. 1991) (rejecting per se rule for ineffectiveness claims and requiring showing of prejudice from "actual errors and omissions"). And, in fact, the Attorney Registration and Disciplinary Commission reviewed the petitioners' complaints about their attorney and concluded that there was "not a sufficient basis for further action" and insufficient evidence that he had acted unprofessionally. Ahmed insists that she was not adequately represented, but she appeared at her hearing, testified, and presented her case in full. There is no showing that she was unable to "reasonably present her case." *See Solis-Chavez*, 662 F.3d at 466; *Lin*, 630 F.3d at 546.

The petition for review is **DENIED**.