In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-4272

FERNANDO CANTO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A019-725-989

ARGUED SEPTEMBER 18, 2009—DECIDED JANUARY 28, 2010

Before EASTERBROOK, *Chief Judge,* and WILLIAMS and
TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Fernando Canto was convicted
of counterfeiting over two decades ago. Since then, by
all accounts, his life has been on the straight and narrow.
After returning from a trip abroad, he was detained and
found to be deportable because of his counterfeiting
conviction. Canto concedes deportability but argues that

the differing treatment of foreign and domestic convictions violates his equal protection rights—foreign convictions over fifteen years old cannot be a basis for deportation, whereas similar domestic convictions can. Because several rational bases, including concerns about the rights and protections of foreign justice systems as compared to our own, may have motivated Congress in drawing this distinction, Canto's argument fails. Canto also argues that the repeal of section 212(c) of the Immigration Code, which allowed certain deportable aliens to petition the Attorney General for relief from deportation, was impermissibly retroactive as applied to him. Our precedent has already addressed this question and found that aliens who went to trial did not forgo any rights in reliance on the continued existence of section 212(c), so it was not impermissibly retroactive. We therefore deny Canto's petition for review.

## I. BACKGROUND

Fernando Canto, a native of Mexico, was admitted to the United States as a lawful permanent resident in 1971. Since his arrival in this country, he has married, started a family, and owned his own business that employed twenty people. In 1983, however, he was convicted, after a trial, of two counts of federal counterfeiting in violation of 18 U.S.C. §§ 472 and 473, and a related weapons charge. He was sentenced to two years' imprisonment.

Over two decades later, upon reentering the United States from a trip to Mexico in April 2005, immigration officials detained him and charged him with removability

as a result of his commission of a crime of moral turpitude. Canto does not dispute that federal counterfeiting is a crime of moral turpitude, nor does he dispute that a crime of moral turpitude fits the definition of an "aggravated felony," for which he is removable under 8 U.S.C. § 1252(a)(2)(c). Although Canto conceded removability before the Immigration Judge and the Board of Immigration Appeals ("BIA"), he argued that he should be allowed to petition the Attorney General for a deportation waiver under section 212(h) and now-repealed section 212(c) of the Immigration Code. The BIA denied his petition and he now appeals.

## II. ANALYSIS

### A. Equal Protection

Canto first argues that the definition of "aggravated felony" in the Immigration Code violates the equal protection component of the Due Process Clause. The Immigration Code defines "aggravated felony" to include all domestic aggravated felony convictions but only those foreign felony convictions for which the petitioner had completed his term of imprisonment during the fifteen years prior to the commencement of removal proceedings against him. *See* 8 U.S.C. § 1101(a)(43). Because Canto's domestic conviction for counterfeiting was over twenty years old in March 2005, had it been a foreign conviction, he would not have been removable. He contends that this differing treatment of foreign and domestic convictions violates equal protection principles.

Since this classification involves neither a fundamental right nor a suspect classification, it is accorded a strong presumption of validity and need only be supported by a rational basis. *Heller v. Doe*, 509 U.S. 312, 319-20 (1993). Federal classifications in immigration matters are subject to "relaxed scrutiny," *Nyquist v. Mauclet*, 432 U.S. 1, 7 n.8 (1977), and should be found valid unless they are "wholly irrational," *Mathews v. Diaz*, 426 U.S. 67, 83 (1976). Further, "review of decisions made by Congress in the immigration context is extremely limited, and this is particularly true where the challenged legislation sets criteria for the admission or expulsion of aliens." *Lara-Ruiz v. I.N.S.*, 241 F.3d 934, 946 (7th Cir. 2001). If any plausible reason could provide a "rational basis for Congress' decision to treat the classes differently, our inquiry is at an end, and we may not test the justification by balancing it against the constitutional interest asserted by those challenging the statute." *Id*.

Congress could have had several rationales for exempting older foreign convictions from the Immigration Code's reasons for removability. For example, Congress may have been concerned about the legal protections afforded to defendants in other countries. Congress cannot know how reliable a foreign country's justice system is. Our justice system, constitutional rights, and protections against wrongful conviction differ from those rights offered in Canada, which differ from those rights offered in Botswana, which differ from those rights offered in almost every country in the world. This is especially true when the foreign law in question is constantly evolving, and subject to change within a

fifteen-year period. So, it is perfectly rational that Congress might not want to prevent an alien from seeking a waiver because of a foreign conviction based on different laws without analogous constitutional guarantees.

Congress also might have exempted older foreign convictions because it felt that an alien who committed a crime in the United States forfeited his right to avail himself of the benefits of living in this country because his actions showed a lack of respect for United States law, whereas an alien who committed a crime in another country did not show a similar disrespect. *See Klementanovsky v. Gonzales*, 501 F.3d 788, 794 (7th Cir. 2007). Canto retorts that this court should give just as much credence to foreign law as it does to domestic law because, among other things, almost every foreign country has a lower crime rate than the United States. This argument is not persuasive as our review is limited to whether Congress acted with a rational basis and it need not involve an analysis of the efficacy of foreign law. And if older foreign convictions were treated the same as domestic convictions for purposes of removability, Canto would still be removable. Further, the Supreme Court has already expressed hesitation in giving credence to the law of foreign nations in the manner that Canto suggests. *See Small v. United States*, 544 U.S. 385, 399 (2005). In any event, there very well might be a variety of other reasons for Congress's decision, but the two we list are rational, and enough for us to conclude that 8 U.S.C. §1101(a)(43) does not violate the equal protection component of the Due Process Clause.

**B. Retroactivity of the Repeal of Section 212(c)**

Under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (repealed 1996), deportable aliens who had accrued seven years of lawful permanent residence in the United States could request discretionary relief from deportation by arguing that the equities weighed in favor of allowing them to remain in the United States. Even an alien deportable because he had been convicted of an aggravated felony (such as Canto), *see* 8 U.S.C. § 1227(a)(2)(A)(iii) (1994), was eligible for such discretionary relief if he served a term of imprisonment less than five years. 8 U.S.C. § 1182(c). Section 212(c) was repealed in September 1996, when Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Section 304(b) of IIRIRA repealed § 212(c) relief entirely, replacing it with a procedure called "cancellation of removal," *see* 8 U.S.C. § 1229b (1996), and providing that cancellation of removal is not available to an alien convicted of any aggravated felony. This provision was consistent with section 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), enacted shortly before IIRIRA, which rendered aliens convicted of aggravated felonies, regardless of the length of their sentence, ineligible for discretionary relief from deportation under former section 212(c). *See* 8 U.S.C. § 1182(h).

Had section 212(c) not been repealed, Canto would be eligible to apply to the Attorney General for equitable relief, and, statistically, he would have approximately a fifty percent chance of success. *See Hem v. Maurer*, 458

F.3d 1185, 1188 (10th Cir. 2006). Canto argues that the repeal of section 212(c) should not be allowed to apply retroactively to him. The Supreme Court has already addressed the retroactive application of this repeal in the context of a deportable alien who pled guilty to a crime of moral turpitude pursuant to a plea agreement that specified that he would receive less than five years' imprisonment. In *I.N.S. v. St. Cyr*, 533 U.S. 289, 326 (2001), the Supreme Court held that discretionary relief under former section 212(c) "remains available for aliens . . . whose convictions were obtained through plea agreements and who . . . would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." In reaching this conclusion, the Court applied the *Landgraf* formula, which requires a court to first see if Congress unambiguously intended the legislation to apply retroactively, and, if not, to examine whether it attaches new legal consequences to prior events because its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). The *St. Cyr* Court concluded that Congress did not provide a sufficiently clear command with respect to the temporal reach of the repeal of former § 212(c) by IIRIRA section 304(b), such that the Court could not unambiguously conclude that Congress intended it to apply retroactively. *St. Cyr*, 533 U.S. at 319. The Court then concluded that the retroactive application of IIRIRA section 304(b) would have an impermissible retroactive

effect on aliens who had pled guilty prior to the repeal of section 212(c) because the repeal fundamentally changed the rights they had at the time of their convictions. *Id*. The Court highlighted the quid pro quo of the criminal plea agreement, and reasoned that because aliens like St. Cyr "almost certainly relied upon that likelihood of receiving discretionary relief under section 212(c) in deciding whether to forgo their right to a trial, the elimination of any possibility of section 212(c) relief by IIRIRA has an obvious and severe retroactive effect." *Id*. at 325; *see also id*. at 322 ("Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial."). So, the Court held that the repeal of section 212(c) would not apply retroactively to petitioners who had accepted plea agreements.

The Court, however, did not address whether relief under former section 212(c) would be available to petitioners, such as Canto, who did not accept a plea agreement but instead pleaded not guilty and were convicted after a trial. Although the Supreme Court did not embark on this analysis, it did much of the legwork for us. The *Landgraf* analysis here is the same as it is in *St. Cyr*—Congress did not state with certainty that it intended the repeal of section 212(c) to apply retroactively, and the repeal fundamentally changed the rights of certain petitioners. The only question remaining is whether those petitioners who opted to go to trial "relied" on the continued existence of equitable relief

under section 212(c) in foregoing a legal right. The circuits are split on what type of reliance is necessary. The Fourth and Eleventh Circuits have employed an actual reliance standard, under which the petitioner must show that he actually subjectively relied on the prior law in the criminal proceedings resulting in his conviction. *See Ferguson v. United States Atty. Gen.*, 563 F.3d 1254, 1268 (11th Cir. 2009); *Chambers v. Reno*, 307 F.3d 284, 290-91 (4th Cir. 2002). The Third, Eighth, and Tenth Circuits have employed an objective reliance standard, under which it is only necessary to establish that relevant circumstances gave rise to interests upon which it would have been objectively reasonable for a petitioner to rely on the prior law in deciding to give up a legal right. *See Lovan v. Holder*, 574 F.3d 990, 993-94 (8th Cir. 2009) (holding that repeal of section 212(c) had an impermissibly retroactive effect as applied to aliens convicted by either guilty plea or by jury); *Hem v. Maurer*, 458 F.3d 1185, 1192 (10th Cir. 2006) (same); *Ponnapula v. Ashcroft*, 373 F.3d 480, 493 (3d Cir. 2004) (same). The First and Ninth Circuits have not differentiated between the two types of reliance and have categorically held that petitioners who chose to go to trial could not possibly have relied on the continued existence of section 212(c) relief. *Dias v. I.N.S.*, 311 F.3d 456, 458 (1st Cir. 2002); *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121 (9th Cir. 2002). The Second Circuit appears conflicted on the issue. In two cases, it has agreed with the First and Ninth Circuits that a petitioner who goes to trial cannot later argue that he relied on the continued existence of section 212(c) in opting to reject a plea agree-

ment. *See Swaby v. Ashcroft*, 357 F.3d 156, 162 (2d Cir. 2004); *Rankine v. Reno*, 319 F.3d 93, 99 (2d Cir. 2003). Then, in *Restrepo v. McElroy*, 369 F.3d 627, 640 (2d Cir. 2004), it held that a defendant who went to trial but later argued that his "reliance" on the continued existence of section 212(c) did not involve his decision to go to trial, but rather his decision to not immediately file a section 212(c) request after being convicted, was entitled to an evidentiary hearing to determine whether he actually relied on section 212(c)'s continued existence. *Accord Carranza-De Salinas v. Gonzales*, 477 F.3d 200, 206-09 (5th Cir. 2007).

We have agreed with the First and Ninth Circuits. *See Montenegro v. Ashcroft*, 355 F.3d 1035, 1036-37 (7th Cir. 2004) (per curiam). In *Montenegro*, we held that relief under former section 212(c) only remains open to: (1) petitioners who pled guilty prior to section 212(c)'s repeal; or (2) "aliens who conceded deportability before AEDPA's enactment, with the expectation that they could seek waivers under § 212(c)." *Id.* at 1037. Canto fits in neither category. Moreover, we expressly found a petitioner could not possibly have relied on the continued existence of section 212(c) relief in deciding to go to trial. *Id.* ("But this exception does not apply to aliens like Montenegro who chose to go to trial; such aliens did not abandon any rights or admit guilt in reliance on continued eligibility for § 212(c) relief.").

Here, Canto makes a slightly more nuanced argument, relying on *Hem*, 458 F.3d at 1192, that he forwent his legal right to appeal his conviction in reliance on his continued ability to seek section 212(c) relief. The distinc-

tion between our analysis in *Montenegro* and that of the Third, Eighth, and Tenth Circuits, which have found that the repeal of section 212(c) to be impermissibly retroactive as applied to petitioners who went to trial, is one of fine line drawing. With the exception of the Fourth Circuit, the circuits are generally in agreement that the Supreme Court prefers a categorical approach over an individualized analysis when deciding whether an alien relied on the continued existence of section 212(c) in forgoing a legal right. It cannot be disputed that the Supreme Court took a categorical approach in *St. Cyr*—it found that the category of aliens who accepted plea agreements prior to the repeal of section 212(c) relied on its continued existence in deciding to accept the plea. *See Hem*, 458 F.3d at 1199 ("[T]he Court established an objective, categorical scheme for determining if a statute has impermissible retroactive effects. The Court generalized to a category of affected aliens from the facts of the case before it, asking whether the repeal of § 212(c) would have an "impermissible retroactive effect for aliens who, like [St. Cyr], were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief." (citation and quotation omitted)); *Restrepo*, 369 F.3d at 640 ("In *St. Cyr II*, instead, the Supreme Court took a categorical approach. . . . We have not had briefs or oral arguments on whether the approach taken by the Supreme Court in *St. Cyr II* or a more individualized one is appropriate in the circumstances before us.").

   In the aftermath of *St. Cyr*, faced with many different reliance arguments, courts either were forced to create

new categories and decide whether the group of individuals in them would have relied on the continued existence of section 212(c) relief, or abandon the categorical approach and evaluate reliance on a case-by-case basis. *See Restrepo*, 369 F.3d at 642 (Calabresi, J., concurring). For example, the Third Circuit concluded that the category of aliens who turned down plea agreements but went to trial relied on the continued ability to seek section 212(c) relief such that its repeal was impermissibly retroactive with respect to them. *See Ponnapula*, 373 F.3d at 494. And the Tenth Circuit concluded the same about the category of aliens who went to trial (even in the absence of a plea agreement) but gave up their right to appeal their conviction when a successful appeal could have deprived them of their ability to seek section 212(c) relief. *See Hem*, 458 F.3d at 1199-1200.

We, too, have followed the categorical approach, finding that the category of aliens who went to trial did not forgo any possible benefit in reliance on section 212(c). *See Montenegro*, 355 F.3d at 1037. This category necessarily includes those aliens that went to trial, but chose not to appeal. The Executive Office for Immigration Review has promulgated regulations consistent with our interpretation. *See* Exec. Office for Immigration Review, Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1, 1997, 69 Fed. Reg. 57826 (Sept. 28, 2004) (codified at 8 C.F.R. pts. 1003, 1212, 1240 (2006)). Even if we were to regard the group of aliens who did not appeal as a separate category, we would be hesitant to find that they relied

on section 212(c). Although, as the Supreme Court recognized in *St. Cyr*, it is more than likely that those aliens faced with plea agreements contemplated their ability to seek section 212(c) relief, the same logic cannot necessarily be extended to those aliens convicted at trial. It is a stretch to think that the majority of aliens who went to trial and received a sentence of less than five years would forgo their right to appeal on the off chance that they would be successful, get retried, be convicted again, and then receive a sentence greater than five years. So, it would be more likely than not that the existence of section 212(c) did not affect their decision about whether to appeal their convictions. Therefore, we must affirm the BIA's decision.

## III. CONCLUSION

Accordingly, we DENY Canto's petition for review.