In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1728

RUBEN LOPEZ RAMOS,

*Petitioner*,

*v.*

WILLIAM P. BARR, Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
No. A039-091-760

ARGUED SEPTEMBER 25, 2019 — DECIDED NOVEMBER 7, 2019

Before RIPPLE, ROVNER, and BRENNAN, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Ruben Lopez Ramos brings this petition to review the removal decision of the Board of Immigration Appeals ("BIA"). He claims that the statutory scheme set forth in the since-amended 8 U.S.C. § 1401 (1968) (amended 1986) and §§ 1431–32 (1968) (amended 2000) violates the Equal Protection guarantee of the Fifth Amendment's Due Process Clause because those provisions prevent

him from deriving citizenship through his United States citizen mother. The Immigration Judge ("IJ"), noting that the immigration court lacks jurisdiction over constitutional questions, limited her analysis to the provisions of the Immigration and Nationality Act ("INA") and denied Mr. Lopez's motion to terminate removal proceedings. The BIA affirmed without opinion the decision of the IJ.[1] Mr. Lopez timely seeks review of the removal decision here.[2] Because the statutory scheme has a rational basis, there is no equal protection violation. Consequently, we deny the petition for review.

## I.

## BACKGROUND

Mr. Lopez was born in Mexico on November 19, 1974, to Bertha Ramos de Lopez and Jaime Lopez Gonzalez. Ms. Ramos de Lopez, although born in Mexico, had acquired Unit-

---

[1] The jurisdiction of the Board of Immigration Appeals ("BIA") is premised on 8 U.S.C. § 1229a.

[2] Our jurisdiction is premised on 8 U.S.C. § 1252(a)(2)(D) and (b)(5)(A). The Commissioner contends that this court is barred from review by § 1252(a)(2)(C), which precludes review of final orders of removal against aliens removable by reason of having committed a criminal offense covered in 8 U.S.C. § 1182(a)(2) or § 1227(a)(2)(A)(iii), (B), (C), or (D). Government's Br. 2–3. It is undisputed that Mr. Lopez committed a criminal offense covered by § 1227(a)(2)(A)(iii) and (a)(2)(B)(i). However, whether § 1252(a)(2)(C) bars review depends on whether Mr. Lopez is a citizen, a question we have jurisdiction to decide. Section 1252(b)(5)(A) provides: "If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim."

ed States citizenship at birth through her mother. Ms. Ramos de Lopez entered the United States in 1978 and received a certificate of citizenship in 1990. Mr. Lopez's father's immigration status is unknown.

Mr. Lopez was admitted to the United States as a lawful permanent resident in January 1985. On November 12, 2009, he was convicted of two counts of conspiracy to distribute methamphetamine and was sentenced to 122 months' imprisonment. During his incarceration, Immigration and Customs Enforcement ("ICE") officials advised him that he might have derived United States citizenship through his mother. After his release, he filed an application for a certificate of citizenship but later withdrew it.

On September 6, 2018, the Department of Homeland Security ("DHS") filed a notice to appear before the immigration court, initiating removal proceedings against Mr. Lopez. The notice to appear alleged that Mr. Lopez is not a citizen of the United States but a native and citizen of Mexico. It further alleged that he was admitted to the United States as an immigrant and later convicted of two counts of conspiracy to distribute methamphetamine. It charged that these convictions rendered him removable under § 1227(a)(2)(A)(iii) and (a)(2)(B)(i).[3]

---

[3] 8 U.S.C. § 1227(a)(2)(B)(i) reads:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving

(continued … )

Although he admitted the other allegations in the notice to appear, Mr. Lopez denied that he is not a citizen or national of the United States. He maintained that the sections of the INA in force at the time of his birth that prevented him from automatically deriving citizenship violated the Equal Protection Clause of the Fifth Amendment. In his view, former statutes 8 U.S.C. §§ 1431–32 (1968) (amended 2000) impermissibly distinguished between children born abroad to two noncitizen parents and children born abroad to one citizen parent and one noncitizen parent.

Noting the immigration court's lack of jurisdiction over constitutional issues, the IJ declined to consider Mr. Lopez's equal protection challenge and ruled that Mr. Lopez was not a citizen of the United States and therefore was removable. The BIA affirmed without opinion.

On April 18, 2019, Mr. Lopez filed a motion for an emergency stay of removal. We denied his motion, holding that he had not made the requisite showing of irreparable harm or substantial likelihood of success on the merits. Judge Hamilton dissented. He noted that Mr. Lopez was removable "because of an odd, arguably irrational, conundrum" and that a stay of removal would do no harm and would give the court time to consider carefully the issues.[4]

---

( … continued)

> possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(A)(iii) reads: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

[4] R.9 at 1–2.

Mr. Lopez timely filed this petition for review of the BIA decision.[5]

## II.

## DISCUSSION

### A.

Mr. Lopez bases his claim to citizenship on his membership in the class of children who fall under former 8 U.S.C. § 1431 (1968) (amended 2000).[6] He is not, however, a member of the class described in this provision. That statute addressed the automatic conferral of citizenship on the minor child of one citizen parent and one noncitizen parent "*if such alien parent is naturalized*." § 1431(a) (emphasis added). Nothing in the record suggests that Mr. Lopez's father was ever

---

[5] Because the BIA affirmed without opinion the IJ's decision, we review the IJ's decision as the final agency determination. *Georgis v. Ashcroft*, 328 F.3d 962, 966–67) (7th Cir. 2003) (explaining that, in such a situation, "the IJ's decision becomes that of the BIA for purposes of judicial review").

[6] Former 8 U.S.C. § 1431 (1968) (amended 2000) provided in relevant part:

> (a) A child born outside of the United States, one of whose parents at the time of the child's birth was an alien and the other of whose parents then was and never thereafter ceased to be a citizen of the United States, shall, if such alien parent is naturalized, become a citizen of the United States, when —
> (1) such naturalization takes place while such child is under the age of sixteen years; and
> (2) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter and begins to reside permanently in the United States while under the age of sixteen years.

naturalized, nor does Mr. Lopez make such a claim. The IJ concluded—and the Government relies on the assumption—that a related but different statute, former § 1401(a)(7) (1968) (amended 1986),[7] applied to Mr. Lopez at the time of his birth. Section 1401 "provides the general framework for the acquisition of citizenship at birth." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686–87 (2017). Subsection (a)(7) of that provision governed the nationality and citizenship of the born-abroad child of a citizen and a noncitizen. It required that the citizen parent satisfy a "physical presence" minimum of ten years' residence in the United States prior to the child's birth. § 1401(a)(7).

In essence, then, Mr. Lopez challenges a statutory scheme that automatically conferred citizenship on some children born abroad but not on others. He submits that the statutory scheme is discriminatory because a child claiming citizenship through a parent born in the United States must demonstrate that the parent had a physical presence in the United States for ten years. By contrast, a child whose parent

---

[7] Former 8 U.S.C. § 1401(a)(7) (1968) (amended 1986) provided:

> [A] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years … .

The statute has since been amended and currently contains a residency requirement of five years' presence, five of which must be after the age of fourteen. 8 U.S.C. § 1401(g) (2012).

acquired United States citizenship through naturalization need not show such physical presence of the parent. He maintains that this statutory scheme violates the Equal Protection Clause because it made the citizenship of the children in the former class conditional but granted automatic citizenship to children in the latter group.

**B.**

The principles that must govern our evaluation of Mr. Lopez's claim are well-established. United States citizenship is acquired either by birth or by naturalization. *Miller v. Albright*, 523 U.S. 420, 423 (1998). The citizenship of those who are "born or naturalized in the United States, and subject to the jurisdiction thereof" is constitutionally guaranteed and not subject to abridgment. U.S. Const. amend. XIV, § 1; *Afroyim v. Rusk*, 387 U.S. 253, 262 (1967). By contrast, "[p]ersons not born in the United States acquire citizenship by birth only as provided by Acts of Congress." *Miller*, 523 U.S. at 424. Mr. Lopez contends that the statutory scheme under which he did not derive citizenship at birth is an unconstitutional exercise of Congress's power.

Our review of a constitutional question is de novo. *Anderson v. Milwaukee Cty.*, 433 F.3d 975, 978 (7th Cir. 2006). When examining an equal protection claim under the Fifth Amendment,[8] we first determine whether the statute "impacts a fundamental right or targets a suspect class. When no

---

[8] The Supreme Court's approach to equal protection claims under the Fifth Amendment "has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

suspect class or fundamental right is involved, we employ a rational basis test to determine whether the legislative act is constitutional." *Eby-Brown Co., LLC v. Wisconsin Dep't. of Agric.*, 295 F.3d 749, 754 (7th Cir. 2002). This rule is particularly appropriate when we are dealing with distinctions made in the context of the admission or removal of noncitizens. *Canto v. Holder*, 593 F.3d 638, 641 (7th Cir. 2010). In this area, Congress has exceptionally broad power to determine the classes of noncitizens who may enter the Country. *See Fiallo v. Bell*, 430 U.S. 787, 794 (1977); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765–67 (1972). If "any plausible reason could provide a rational basis for Congress' decision to treat the classes differently, our inquiry is at an end, and we may not test the justification by balancing it against the constitutional interest asserted by those challenging the statute." *Lara-Ruiz v. INS*, 241 F.3d 934, 947 (7th Cir. 2001) (quotation marks omitted) (citations omitted). Mr. Lopez does not maintain that he is a member of a suspect or protected class or that his fundamental rights are at stake. *See Morales-Santana*, 137 S. Ct. at 1689 (applying heightened scrutiny to gender-based classification in the same statutory scheme at issue here). The parties therefore appropriately focus their arguments on whether the since-amended statutory scheme is supported by a rational basis.

The requirement of the statutory provision at the heart of this case can be stated succinctly: A person born abroad to one citizen and one noncitizen parent did not automatically derive citizenship at birth *unless* the citizen parent had been present physically in the United States before the child's birth for at least ten years. Five or more of those years had to be after the parent attained the age of fourteen. Mr. Lopez does not contend that this provision does not apply to him.

He also does not contest that his mother (the citizen parent) did not fulfill this residency requirement. Instead, he simply maintains that there is no rational basis on which to distinguish between him—a minor child, born abroad to a United States citizen, who lawfully entered the Country and lived in the custody of that United States citizen parent in the United States—and a lawful permanent resident minor child living in the custody of a lawful permanent resident parent when that parent naturalizes.

As the party challenging the constitutionality of the statutory scheme's differential treatment of the two groups, Mr. Lopez bears the burden of establishing that there is no "reasonably conceivable state of facts that could provide a rational basis for the classification." *United States v. Nagel*, 559 F.3d 756, 760 (7th Cir. 2009). This is indeed a high burden because rational basis review is quite limited. *See generally Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955) (applying minimal scrutiny in rational basis review). "Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Lamers Dairy Inc. v. U.S. Dep't. of Agric.*, 379 F.3d 466, 473 (7th Cir. 2004). "Practically, our [rational basis] review must be highly deferential." *Id.*

Acknowledging that he must show that there is *no* rational basis on which to distinguish between the two classes of children, Mr. Lopez submits that the statutory scheme evinces a congressional concern about "the influence of an alien father (or a U.S. citizen father, who had never resided in the United States and thereby might have greater

ties/allegiance to another country) over the political ideology of what would otherwise be his U.S. citizen child."[9] He offers no source for this proposed rationale. Further, he maintains that nothing in the legislative history provides an explanation for the differential treatment. Mr. Lopez also submits that the eventual passage of the Child Citizenship Act of 2000, which eliminated the distinction between the two classes, "wholly belie[s]" the assertion that there is a rational basis for the "inequitable classification."[10]

The Government proffers the justification that Congress intended to confer citizenship on individuals who had a substantial connection to the United States.

> The rational basis for that provision is to extend citizenship to those with ties or allegiance to the United States, rather than the foreign-born offspring of all individuals who were born in the [C]ountry (or themselves derived citizenship through a parent) but did not reside, settle, or build a life here.[11]

As the Government sees it, the parents of both classes of children must manifest an intent to settle or make a home in the United States. A citizen parent must satisfy a residency requirement under former § 1401(a)(7); a parent not born in the United States must satisfy a naturalization requirement under former § 1432. Notably, at the relevant time, the naturalization process carried—and still carries—a residency re-

---

[9] Appellant's Br. 8–9.

[10] Appellant's Br. 10.

[11] Government's Br. 21.

quirement for the applicant. 8 U.S.C. § 1427 (1968) (amended 1990).[12] The Supreme Court of the United States has acknowledged the "legitimate concern of Congress that those who bear American citizenship and receive its benefits have some nexus to the United States." *Rogers v. Bellei*, 401 U.S. 815, 832 (1971) (internal citation omitted). Indeed, it has described residence in the Country as "the talisman of dedicated attachment." *Id*. at 834 (citation omitted).

The Government also notes that the legislative history of the statute makes clear that the legislation was aimed at preventing

> the perpetuation of United States citizenship by citizens born abroad who remain there, or who may have been born in the United States but who go abroad as infants and do not return to this country. Neither such persons nor their foreign-born children would have a real American background, or any interest ex-

---

[12] Former 8 U.S.C. § 1427 (1968) (amended 1990) provided in relevant part:

> (a) No person … shall be naturalized unless such petitioner,
> (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time, and who has resided within the State in which the petitioner filed the petition for at least six months,
> (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship … .

cept that of being protected by the United States Government while in foreign countries.[13]

Our colleagues on the Court of Appeals for the Second Circuit have confronted a situation like the one before us today. Their resolution of that case is instructive. In *Colaianni v. INS*, 490 F.3d 185 (2d Cir. 2007), the petitioner was the adopted child of two native-born United States citizens. He argued that former §§ 1431–33 arbitrarily favored foreign-born adopted children of *subsequently naturalized citizens* over foreign-born adopted children of *native-born United States citizens*. The children of subsequently naturalized citizens received automatic citizenship; parents who were citizens of the United States had to apply for a certificate of citizenship on behalf of their children. *Colaianni*, 490 F.3d at 188. The Government articulated two reasons for the distinction: that it promoted an appreciation of the rights and obligations of citizenship and that it deterred immigration fraud. *Id.* The Second Circuit held that these interests were sufficient to survive rational basis review. *Id.* In its view, requiring an affirmative act to secure derivative citizenship is rationally related to the legitimate aim of deterring immigration fraud. *Id.*

Notably, in *Dent v. Sessions*, 900 F.3d 1075 (9th Cir. 2018), *cert. denied sub nom. Dent v. Barr*, 139 S. Ct. 1472 (2019), our colleagues on the Court of Appeals for the Ninth Circuit explicitly followed the Second Circuit and upheld former § 1433. The petitioner in *Dent*, the adopted child of a United States citizen, was denied naturalization for failure to prose-

---

[13] Government's Br. 20–21 (quoting S. Rep. No. 76-2150, at 4 (1940)).

cute. He challenged the constitutionality of former § 1433, which required that United States citizens petition for the naturalization of foreign-born adopted children while conferring automatic citizenship on children born abroad and adopted by naturalizing parents. The court held that the statute satisfied the rational basis test. It concluded that the Government had a legitimate interest in deterring immigration fraud and that requiring citizen parents to affirmatively act to secure naturalization for their adopted children served this interest. The requirement put citizen parents on par with naturalizing parents, since "the intensive naturalization process gave the government the opportunity to inquire into naturalizing parents' relationships with their previously adopted children." *Id.* at 1082.

The Second and Ninth Circuits held that the since-amended statutory scheme was justified under the rational basis test. We must follow the same course. The since-amended statutory scheme here bears a rational relation to the Government's legitimate interest in ensuring that children born abroad who become citizens have ties to the United States.

The decision of the Second Circuit in *Colaianni* also provides persuasive guidance on Mr. Lopez's argument that the subsequent amendment of the statutory scheme proves the unconstitutionality of the earlier version. "The fact that the [Child Citizenship Act of 2000] eliminated the statutory distinction [petitioner] challenges 'is not determinative as to whether the former statute is rationally related to a legitimate government interest.'" *Colaianni*, 490 F.3d at 188 (quoting *Smart v. Ashcroft*, 401 F.3d 119, 123 (2d Cir. 2005)).

**CONCLUSION**

The statutory scheme of which Mr. Lopez complains survives the rational basis test. The Government has offered a plausible rationale for the distinction between children of one citizen parent and one noncitizen parent and children of two noncitizen, naturalizing parents. Accordingly, the decision of the BIA is affirmed.

AFFIRMED